In the Matter of the Petition of Robert **FRANKEL** and Charlene Frankel, as owners of a 2003 Regal Motor Yacht, H.I.N. No. RGMLB121C303, for Exoneration of Liability, Petitioners.

No. 13–cv–0910 (ADS)(ARL).

United States District Court, E.D. New York.

Jan. 16, 2014.

---

Cozen O'Connor, New York, NY, by David Yita Loh, Esq. of Counsel, for Petitioners.

Lerner, Arnold Winston LLP, New York, NY, by Jonathan C. Lerner, Esq., Matthew Scott Azus, Esq., of Counsel, for Claimants Jeffrey Friedman and Donna Friedman.

## SHORT ORDER

SPATT, District Judge.

This action concerns an incident that occurred on October 19, 2012 involving a vessel owned by the Petitioners Robert Frankel and Charlene Frankel (the "Petitioners").

On February 20, 2013, Petitioners commenced this action for Exoneration From or Limitation of Liability pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, and Rule F of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions.

As part of this filing and in accordance with Rule F, the Petitioners filed two pleadings entitled "Ad Interim Security," and "Order Restraining Prosecution of Claims, Approving Petitioners' Security, Directing Issue of Notice and the Filing of Claims."

The Petitioners filed the "Ad Interim Security" in the amount of $21,984.97, with interest thereon at the rate of 6% per annum as required by Rule F. The "Ad Interim Security" is a stipulation executed by the Petitioners' insurers, and represents security for the value of the subject vessel.

The "Order Restraining Prosecution of Claims, Approving Petitioners' Security, Directing Issue of Notice and the Filing of Claims," signed by the Court on February 20, 2013, prohibits all potential claimants to the vessel from pursuing any claims outside of this Limitation proceeding.

Counsel for Claimants Jeffrey and Donna Friedman (the "Claimants") did not object to the amount of the security or the restraining notice. On or about September 3, 2013, rather than file a claim in accordance with the restraining notice, the Petitioners filed and served a notice of claim of a lien against the vessel.

On Monday September 16, 2013, the Petitioners' counsel e-mailed the Claimants' counsel, demanding that the notice of claim of a lien be withdrawn because it was improperly filed. The Petitioners' counsel gave the Claimants' counsel until the close of business on Wednesday September 18, 2013 to advise of their position. Needing additional time, the Claimants' counsel requested an extension until the close of business on September 20, 2013.

By Thursday September 19, 2013, the Claimants' counsel had determined that the Petitioners' counsel's position was correct. The Claimants' counsel contacted the United States Coast Guard to determine the proper procedure to withdraw a notice of claim of a lien and were informed that they needed to file a satisfaction.

However, the Claimants' counsel apparently did not recall the Friday September 20, 2013 deadline and failed to advise the Petitioners' counsel of Claimants intention to withdraw the lien. The following Monday, on September 23, 2013, the Petitioners filed the instant motion to vacate the lien and to recover attorneys' fees in connection with the motion under 46 U.S.C. § 31343(c)(2). The Claimants' counsel then e-mailed the Petitioners' counsel advising him that Claimants had agreed to withdraw the lien and asked the Petitioners' counsel to withdraw the motion as a professional courtesy. The Petitioners' counsel advised the Claimants' counsel that the Petitioners would not permit withdrawal of the motion.

On September 26, 2013, the Claimants' counsel filed the satisfaction of the lien. On October 7, 2013, the Claimants filed opposition papers to the motion, indicating that the lien had been withdrawn. Nonetheless, the Petitioners filed reply papers, characterizing the Claimants' conduct as vexatious and seeking attorneys' fees, including for its reply papers.

The Court finds that the Claimants have withdrawn the lien. Therefore, the Court denies the instant motion as moot.

With respect to attorneys' fees, the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31343(c)(2) provides that in maritime lien proceedings, "[t]he court may award ... attorneys fees to the prevailing party, unless the court finds that the position of the other party was substantially justified or other circumstances make an award of ... attorneys fees unjust." 46 U.S.C. § 31343(c)(2).

Here, although the Petitioners effectively defeated the lien, it is not clear that they qualify as a "prevailing party" because the instant motion was denied as moot.

The Supreme Court has generally given a "generous formulation" to the term prevailing party, stating that plaintiffs may be entitled to attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks omitted). However, the Supreme Court took a somewhat more restrictive approach in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

There, the plaintiffs brought suit against the State of West Virginia and twenty other defendants seeking declaratory and injunctive relief. The lawsuit claimed that a provision of the West Virginia code requiring all residents of residential board and care homes to be capable of "self-preservation" violated federal law. After the parties began discovery, the West Virginia Legislature eliminated the self-preservation provision and the district court dismissed the case as moot. Thereafter, the plaintiffs sought attorney's fees as a prevailing party on the ground that their lawsuit was the "catalyst" in forcing the defendants to change the law. Although most circuit courts at the time recognized this "catalyst theory" as one way plaintiffs could become prevailing parties, the district court rejected plaintiffs' argument and the Fourth Circuit affirmed. The Supreme Court disagreed.

Relying on the definition in Black's Law Dictionary, the Supreme Court held that "a 'prevailing party' is one who has been awarded some relief by the court." *Id.* at 603, 121 S.Ct. 1835. It rejected the catalyst theory as a basis for an award of fees because it "allows an award where there is no judicially sanctioned change in the legal relationship of the parties" and "lacks the

necessary judicial imprimatur." *Id.* at 605, 121 S.Ct. 1835. Essentially, in order to be considered a "prevailing party" after *Buckhannon,* a plaintiff must not only achieve some "material alteration of the legal relationship of the parties," but that change must also be judicially sanctioned. *See N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n,* 272 F.3d 154, 157 (2d Cir.2001).

While *Buckhannon* concerned different fee-shifting provisions from those in this case—namely, the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990—"the standards used to interpret the term prevailing party under any given fee-shifting statute are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party." *J.C. v. Reg'l Sch. Dist. 10,* 278 F.3d 119, 123 (2d Cir.2002) (internal quotation marks omitted) (applying *Buckhannon* to 42 U.S.C. § 1988).

Applying *Buckhannon* here, the Court finds that the Petitioners do not qualify as a "prevailing party" under 46 U.S.C. § 31343(c)(2). The Court notes that application of *Buckhannon* in this case is not inequitable. Before the Petitioners initiated the motion to vacate, the Claimants' counsel notified the Petitioners' counsel, who notified the Petitioners, that the Claimants would be withdrawing the underlying lien. Viewed this way, the Court finds that the Petitioners could have reasonably avoided these expenses.

In sum, the Court denies the motion to vacate the lien as moot and denies the request for an award of attorneys' fees.

**SO ORDERED.**